# EXHIBIT B

| | |
|---|---|
| District Court, Denver County, State of Colorado<br>1437 Bannock Street<br>Denver CO 80202<br>ANDRE BENSON, an Individual<br>*Plaintiff,*<br><br>v.<br><br>KROENKE SPORTS & ENTERTAINMENT LLC, a foreign limited liability Company; THE DENVER NUGGETS LIMITED PARTNERSHIP, a foreign Limited Partnership; KROENKE ARENA COMPANY LLC, a/k/a BALL ARENA, a Colorado limited liability Company<br>*Defendant.* | DATE FILED: June 11, 2024<br>CASE NUMBER: 2024CV482<br><br>FILED IN DENVER DISTRICT COURT<br>JUN 11 2024<br>DENVER, COLORADO<br>COUNTER CLERK<br><br>▲ COURT USE ONLY ▲ |
| *Counsel for Plaintiff:*<br>Issa Israel, Esq. #54350<br>Consultus Legal Ltd *dba*<br>ISSA ISRAEL LAW FIRM<br>1615 California St. Suite 210<br>Denver Colorado 80202<br>(720) 664 6411 *office*<br>(720) 749 1446 *fax*<br>help@iilawfirm.com | Case No.<br>Division:<br><br>24CV482<br><br>424 |

**VERIFIED COMPLAINT**

**COMES NOW** Plaintiff ANDRE BENSON by and through undersigned Counsel, Issa Israel, Esq., of ISSA ISRAEL LAW FIRM and hereby submits this Complaint and in support thereof states as follows:

## I. INTRODUCTION

This case is based on Plaintiff Andre Benson's claims of race-based discrimination under Title II of the Civil Rights Act of 1964 for treatment he was subjected to when he visited a Denver Nuggets game on December 8, 2023 with a friend. Mr. Benson, a Black American, was approached by agents for Kroenke Sports, Denver Nuggets and Ball Arena and required to prove that he belonged where he was seated despite his tickets having previously been checked. The agent who approached him was rude, aggressive, sarcastic and condescending going so far as to suggest Plaintiff could not afford his tickets. The ordeal has led to emotional distress and embarrassment, and has impacted Mr. Benson personally and professionally by reaggravating old wounds while inflicting new ones. As a result, Mr. Benson seeks appropriate relief for Discrimination and Intentional Infliction of Emotional Distress and Mental Anguish.

## II.   PARTIES AND VENUE

1.   Plaintiff Andre Benson ("Benson") is a resident of the City of Houston, County of Harris, State of Texas.

2.   Defendant Kroenke Sports & Entertainment LLC ("Kroenke Sports") is a Delaware limited liability Company registered in and operating under the laws of the State of Colorado and principally located at 1000 Chopper Circle, Denver CO 80204.

3.   Defendant The Denver Nuggets Limited Partnership ("Denver Nuggets") is a Delaware Foreign Limited Partnership registered in and operating under the laws of the State of Colorado and principally located at 1000 Chopper Circle, Denver CO 80204.

4.   Defendant Kroenke Arena Company LLC, a/k/a Ball Arena ("Ball Arena") is a Delaware limited liability Company registered in and operating under the laws of the State of Colorado and principally located at 1000 Chopper Circle, Denver CO 80204.

5.   The Registered Agent for Kroenke Sports, Denver Nuggets and Ball Arena is Keirstin Beck with a physical address of 1000 Chopper Circle, Denver CO 80204.

6.   Defendants are collectively referred to herein as "Kroenke Sports Defendants."

7.   Plaintiff alleges more than $25,000 in damages and anticipates more than $100,000.

8.   Jurisdiction and Venue are proper in the City and County of Denver, State of Colorado.

## III.   GENERAL ALLEGATIONS

### Plaintiff Andre Benson

9.   Plaintiff Andre Benson is a young, enterprising Black American, Real Estate Agent who, as a resident of Houston Texas, is a longtime fan of the Houston Rockets. Mr. Benson has always cherished his attendance at sporting events which for him serves as a much-needed reprieve from his busy work schedule and an outing where he and his daughter and/or friends can forge positive memories that last a lifetime.

Benson v Kroenke Sports *et al*
Verified Complaint | Page 3

## Defendant Kroenke Sports

10. Defendant Kroenke Sports is a multi-billion-dollar sports and entertainment company, second only to Fenway Sports Group in terms of its valuation. It's vision, perhaps ironically, emphasizes "welcom[ing] fans into…venues as family, providing respect and care from the purchase [sic] of a ticket to the drive home…[and]…celebrat[ing] the best in sport and entertainment by recognizing the diversity and human spirit around us[.]"[1] In addition to the Colorado Avalanche (NHL), Colorado Rapids (MLS), and Colorado Mammoth (NLL), Kroenke Sports owns the Denver Nuggets (NBA).

## Denver Nuggets

11. The Denver Nuggets is a professional basketball team based in Denver Colorado. The Denver Nuggets are the current defending champions in the National Basketball Association (NBA) and were just recently narrowly eliminated from championship contention during the Western Conference Semi-Finals after a thrilling series against the Minnesota Timberwolves that culminated in a Game 7 loss at Ball Arena.

## Ball Arena

12. Ball Arena, previously known as Pepsi Center, is one of the country's premier sports and entertainment venues. Hosting more than 250 events each year including concerts, family shows and community events, Ball Arena is the home to the Denver Nuggets and the location of the Discriminatory and Extreme and Outrageous treatment Plaintiff experienced on December 8, 2023.

## The Discrimination

13. On or about December 8, 2023, Mr. Benson and his friend, Ebony Natale, traveled to Denver Colorado to attend the Houston Rockets v. Denver Nuggets NBA game at Ball Arena. Mr. Benson purchased two tickets (Seats 10-11 of Row 1 in Section 120) expecting fun and excitement.

---

[1] Accessed from https://visionplan.ballarena.com/#vision on February 15, 2024.

14. Mr. Benson's tickets were checked multiple times before being seated in his seats – the last time being just prior to entering Section 120. Unfortunately, Kroenke Sports, keeping with its promise of "recognizing diversity quickly recognized Mr. Benson's racial status and proceeded to transform his evening from high spirited and hopeful to *down*right hellish.

15. Shortly after Mr. Benson was seated, he was singled out and aggressively approached by a man wearing a Kroenke Sports badge who introduced himself as an employee and essentially accused Mr. Benson of stealing the seats he and his guest were occupying. This individual's name badge read Richard Maacy and he spoke to Mr. Benson and his guest in a very aggressive, condescending and disrespectful manner.

16. Mr. Maacy insisted that Mr. Benson had no business sitting in the seats he had purchased and publicly humiliated him going so far as to ask him how much he paid for them, as if he could not afford them. As the incident began to escalate, Mr. Maacy, despite humiliating Mr. Benson in front of untold numbers of fans, could not remove him from his seats so he beaconed to security to assist – adding an implied threat of physical harm to the powder keg of acute mental and emotional abuse he was already subjecting Mr. Benson to.

17. Having 'seen this movie before,' Mr. Benson wisely began filming the incident on his mobile device as a means of protecting himself and preserving the record knowing all too well how quickly and dangerously matters can escalate when bad actors fueled by discrimination imagine Black men to be breaking whatever the rule may be for the day.

18. While Mr. Benson stands by his decision to record the incident and publish it, the public attention and millions of views that it garnered not only drew attention to the darker side of Kreonke Sports, Denver Nuggets and Ball Arena's treatment of Black patrons but also compounded the humiliation already experienced by Mr. Benson who felt immense embarrassment due to other patrons' presence.

19. In one moment Plaintiff was a respected entrepreneur enjoying his evening at a sporting event while in the very next he became, in the eyes of the Kreonke Sports Defendants, a thief undeserving of respect or dignity and targeted solely on the basis of his race. This ordeal was, for Mr. Benson, as American as apple pie, and the role the Kroenke Sports Defendants played in 'cheffing it up' is undoubtedly actionable.

20. Mr. Benson knew he did nothing wrong and he did not deserve to be singled out and treated like the suspect of a crime he is incapable of committing. Yet here he stands, a voice for change for some, but a public mockery in the eyes of many others who like Mr. Maacy thought they recognized in him a shade of darkness that needed to be interrogated like a Salem Witch trial.

21. Unfortunately, in classic American fashion, many who viewed the video had trouble affording Mr. Benson the benefit of any doubt and failed to appreciate how critical it is for us as a nation to resist the temptation of employing selective skepticism drawn along racial lines. Mr. Benson learned, once again, that despite his success, his commitment to being a hardworking, law abiding, respectful citizen meant nothing to the Kreonke Sports Defendants and because of his race he did not deserve to be treated as a part of the "family" or given "respect or care" as other patrons are. Hence, Mr. Benson's diversity was recognized by the Defendants but under circumstances that betray both the letter and the spirit of their supposed mission. To be sure, Mr. Benson made efforts to resolve this matter amicably and quietly, but the Kroenke Sports Defendants didn't consider him or the pain he endured to be worth remedying unless it came at a price befitting a fool.

22. While one would hope corporate giants such as the Kroenke Sports Defendants would not have been so quick or eager to breathe life into the time-honored American tradition of targeted Black Americans for mistreatment and humiliation, Mr. Benson was reminded once again that our nation still has a long way to go and so he relies on the Courts to serve an important part in aiding in that process of racial redemption and healing – one case at a time.

23. In the video recording, Mr. Benson can be heard expressing his frustration that he had purchased the tickets and was being treated so poorly. Mr. Maacy, on the other hand, insisted that he needed to know how much Mr. Benson had paid for the tickets. During the same video, Kroenke Sports security personnel wearing the same name badge, investigated the tickets Mr. Benson had purchased and made no attempt to determine whether the tickets had already been checked, or whether Mr. Maacy's demand stemmed from a legitimate concern. Both were agents of Defendants.

24. Images of the video are included below depicting representatives for Kroenke Sports Defendants harassing Mr. Benson for no reason at all other than the fact they felt he did not belong.







25. When Mr. Maacy was informed that he would be recording his aggression and sarcasm suddenly transformed, in classic sociopathic fashion, to a contrived grin as he harassed Mr. Benson and asked how much he paid for his ticket before flipped his Kroenke Sports badge over to hide his identity. While, for his part, the security personnel did not engage in the same manner of abuse as Mr. Maacy, he did cooperate with Mr. Maacy's efforts to subject Mr. Benson and his guests to an arbitrary, racially fueled, interrogation in front of the entire world.

While the Kroenke Sports Defendants were not successful in ejecting Mr. Benson from the premises, the disparate treatment they subjected him to has caused him to suffer from deep depression and anxiety. After some time of trying to 'white knuckle it' has recognized how critical it is for him to seek help in order to move forward with his life productively. He believes that through ongoing therapy he will continue to make strides and better position himself to find healing, happiness and wholeness once again.

26. The weight of this ordeal has also led Mr. Benson to lose employment opportunities as his once jovial demeanor has given way to a much more somber, serious young man who struggles with an inner pain and embarrassment that has been unshakeable since December 8, 2023 as he has been reminded that because of the color of his skin, he is required to carry the weight of other people's prejudice and problems upon his own shoulders.

27. Mr. Benson did not intentionally desire to bring further attention to this matter, but after reflecting upon the disrespect and disregard of the Kroenke Sports Defendants who thought so little of him that they could sweep this matter under the rug for little more than what would have amounted to a chicken dinner he felt he had to make a statement against these corporate giants who are very aware of the kinds of personnel they bring on board and in fact disregard prior reports of similar occurrences – on information and belief.

28. Even then, Mr. Benson first attempted to resolve this matter privately before filing suit only to be rebuffed and dismissed by the Kreonke Sports Defendants who, demonstrating the same degree of disregard and pomposity demonstrated on December 8, 2023, summarily rejected his overtures leaving him no other choice but to seek relief through judicial and/or administrative process.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Discrimination in Public Accommodation under Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a *et seq.*)**

*(Defendants Kroenke Sports, Denver Nuggets and Ball Arena)*

29. The allegations set forth in the above paragraphs are incorporated herein by reference.

30. On or about December 8, 2023, Plaintiff attended a Denver Nuggets basketball game at Ball Arena, both of which are owned by Kroenke Sports, with the intention of enjoying the event like thousands of other patrons.

31. Upon seating himself and his guest in Section 120 where he had purchased tickets, the Plaintiff was approached by an agent of the Kroenke Sports Defendants who accused him of stealing the seats and demanded that he leave or show proof of purchase acceptable to him.

32. Despite the Plaintiff's attempts at explaining that he had indeed purchased the tickets and was entitled to be at the event, the Defendants' agent continued to insist that he had not and continued to ask him questions such as how much did he pay for the ticket with a smirk on his face as if to suggest he could not afford it.

33. The treatment the Plaintiff was subjected to left him feeling extremely humiliated and discriminated against and ruined the experience of the sporting event thereby denying him the full and equal enjoyment of the goods and services offered by the Kroenke Sports Defendant's place of public accommodation.

## SECOND CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

*(Defendants Kroenke Sports, Denver Nuggets and Ball Arena)*

34.     The allegations set forth in the above paragraphs are incorporated herein by reference.

35.     The elements of the tort of intentional infliction of emotional distress, otherwise known as "outrageous conduct," are (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003).

36.     Kroenke Sports Defendants' conduct in harassing Plaintiff and subjecting him to disparate treatment with respect to his visit to Ball Arena to enjoy the Rockets v. Nuggets basketball game on December 8, 2023 was, under the circumstances set forth herein, extreme and outrageous – particularly given he was singled out and targeted, the Defendants' agent repeatedly suggested he could not afford the ticket, and Ball Arena security complied with his arbitrary demands that Plaintiff's ticket be investigated.

37.     Defendants' conduct under the circumstances was inherently reckless and had the intent of causing Plaintiff severe emotional distress, particularly given the well-publicized history of race-based, disparate treatment.

38.     To date, Plaintiff continues to struggle with the after effect of this ordeal he suffered due to the fault of Defendants.

### V.     PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays this Honorable Court issues orders consistent with the following:

(a)     Declare that Defendants' conduct constitutes Discrimination in Violation of Title II of the Civil Rights Act of 1964 and

  i.  Award compensatory damages to Plaintiff for the emotional distress and humiliation suffered as a result of Defendants' discriminatory conduct; and

  ii. Award punitive damages to Plaintiff as a deterrent against future acts of discrimination by Defendants.

(b) Declare that Defendants' conduct constitutes intentional infliction of emotional distress under Colorado law and

  i. Award compensatory damages to Plaintiff for the severe emotional distress and mental anguish suffered as a result of Defendants' conduct; and

  ii. Award punitive damages to Plaintiff to punish Defendants for their extreme and outrageous conduct and to deter similar conduct in the future.

(c) Grant any additional relief the Court determines just and appropriate.

Respectfully submitted this 28th day of May 2024

Consultus Legal Ltd *dba*
ISSA ISRAEL LAW FIRM

*[signature]*

Issa Israel, Esq. #54350
***Counsel for Plaintiff***

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct to the best of my knowledge and belief.

*[signature: Andre Benson]*

Andre Benson
***Plaintiff***